575 S.E.2d 331

STATE of West Virginia ex rel. WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Child Advocate Office, and Valerie A. McGill, Plaintiffs Below, Appellees,

v.

Harry O. LAMBERT, Defendant Below, Appellant.

No. 30104.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 13, 2002.

Decided Dec. 5, 2002.

Charles R. Webb, Esq., Troy N. Giatras, Esq. Giatras & Webb Charleston, for Harry O. Lambert.

Kimberly D. Bentley, Esq., Charleston, for the West Virginia Department of Health and Human Resources, Bureau for Child Support Enforcement.

Valerie A. McGill, pro se.

**PER CURIAM:**

This action is before this Court upon an appeal from the final order of the Circuit Court of Kanawha County entered on March 7, 2001. Pursuant to that order, the Circuit Court adopted the July 14, 2000, recommended decision of the Family Law Master that the appellant, Harry O. Lambert, owes the appellees, the West Virginia Department of Health and Human Resources and Valerie A. McGill, child support reimbursement in the amount of $170,103.44. The appellant, acknowledging his liability for reimbursement support, denies that he owes $170,103.44 and asserts that the Circuit Court and the Family Law Master failed to provide him with a hearing to determine the correct amount owed and his ability to pay, as mandated by this Court in *State ex rel. Department of Human Services by Adkins v. Huffman*, 175 W.Va. 401, 332 S.E.2d 866 (1985).

This Court has before it the petition for appeal, all matters of record and the argument and briefs of counsel. For the reasons set forth below, the final order of the Circuit Court is reversed, and this action is remanded to that Court for the entry of an order affording appellant Lambert a hearing, pursuant to *Huffman*, upon the above issues. In that regard, this Court notes that, inasmuch as the child in question has reached the age of 18, current child support is no longer payable. Accordingly, collection by the appellees of child support reimbursement from the appellant is hereby stayed pending a final determination of the amount of the appellant's liability.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant Lambert and appellee McGill were never married. In June 1980, McGill's daughter, Heather, was born. Twelve years later, in August 1992, an action was filed in the State of Florida where the appellant was residing: (1) to establish the appellant's paternity of the child, (2) to establish prospective child support payments and (3) to obtain reimbursement for monies paid for the child's support by the West Virginia Department of Health and Human Resources. The action was filed by the Florida Department of Health and Rehabilitative Services upon behalf of the appellees and Heather. The record indicates that, at that time, the appellant, an engineer, was married to an individual by the name of Cindy Lambert. The Florida action was dismissed, however, at the request of the appellees in view of the current action filed in Kanawha County.

On June 9, 1994, the appellees, the West Virginia Department of Health and Human Resources and Valerie A. McGill, filed the current action in the Circuit Court of Kanawha County. As before, the appellees

sought: (1) to establish the appellant's paternity of Heather, (2) to establish prospective child support payments and (3) to obtain reimbursement for monies paid for the child's support by the West Virginia DHHR. With regard to the latter demand, the complaint alleged: "The plaintiff, State of West Virginia, has provided Aid to Families with Dependent Children (hereinafter AFDC) benefits for [the] minor child."

The procedural history of the Kanawha County action is convoluted and involves numerous hearings and recommended orders of the Family Law Master, all making various determinations of the amount of child support reimbursement owed by appellant Lambert to the appellees. Those proceedings culminated in a finding by the Family Law Master in March 1996 that the appellant is the father of Heather and in a subsequent recommendation by the Family Law Master, made during a hearing conducted in July 1997, that appellant Lambert owed the appellees in excess of $38,400 in child support reimbursement.

However, between the July 1997 hearing and the Family Law Master's subsequent notice to the parties of the recommended order (that appellant Lambert owed in excess of $38,400), the action, which had been assigned to Circuit Court Judge Paul Zakaib, was dismissed by the Chief Judge of the Circuit Court, Tod J. Kaufman. Specifically, by order entered on October 15, 1997, Chief Judge Kaufman dismissed a number of civil actions, including the current action, for failure to pay the $20 fee required of cases pending upon the docket for longer than three years. *W.Va.Code*, 59–1–11(b)(11) (1996). The order of dismissal provided that the actions could be reinstated.

As indicated above, the dismissal by Chief Judge Kaufman notwithstanding, the Family Law Master issued a notice of the recommended order. The notice, dated October 29, 1997, gave the parties from November 7 to November 17, 1997, to file objections. Appellant Lambert, apparently unaware that the action had been dismissed, filed objections to the recommended order. Challenging the calculation of child support reimbursement, the appellant asserted that the Family Law Master failed to consider: (1) the appellant's financial records for the periods in question and (2) the fact that the appellant was estranged from his wife, Cindy Lambert, and had agreed to pay separate maintenance to support her and the children of that marriage.

By order entered on July 22, 1998, the Circuit Court (Judge Zakaib) remanded the action to the Family Law Master for a more through determination of the amount of child support reimbursement owed by appellant Lambert. The determination was to be based upon: (1) a consideration of the appellant's income as reflected in the records of the federal Social Security Administration and (2) a new calculation of the appellant's reimbursement liability to be made by the Child Support Enforcement Division of the West Virginia DHHR. The order provided that, following the calculation by the Division, "the parties shall bring this evidence before the Family Law Master for his consideration in determining the amount of arrears." In the order, the Circuit Court noted that, inasmuch as Heather had reached the age of 18, current child support was no longer payable.

Upon remand, however, the Family Law Master attempted to mediate a settlement concerning the issue of child support reimbursement. Specifically, on June 29, 2000, the Family Law Master proposed that appellant Lambert pay $35,000 in settlement of the appellees' claim. The appellant rejected the proposal. The Family Law Master then indicated that he would enter a recommended order, prepared by counsel for appellee McGill, to the effect that appellant Lambert owed the appellees child support reimbursement in the amount of $170,103.44. That amount was based upon the new calculation of the Child Support Enforcement Division making support payable at the rate of $400 per month, plus interest, back to the birth of the child. The $170,103.44 amount included income attributed to appellant Lambert for periods when he allegedly did not work "due to his own actions and of his own volition."

Prior to the entry of the recommended order, appellant Lambert sent a letter to the Family Law Master requesting a hearing and stating that he intended to present defenses to the finding that he owed the appellees $170,103.44. The Family Law Master,

however, who was scheduled to retire from office, never conducted a hearing following the unsuccessful attempt at mediation. On July 14, 2000, the Family Law Master signed the order and recommended that judgment be entered against the appellant in the amount of $170,103.44. By order entered on March 7, 2001, the Circuit Court of Kanawha County adopted the recommendation of the Family Law Master.

## II.

### DISCUSSION

■ First, this Court is of the opinion that the October 15, 1997, dismissal by Chief Judge Kaufman for failure to pay the statutory $20 fee was not fatal to the claim of the appellees for child support reimbursement. As stated above, the dismissal occurred between a hearing conducted by the Family Law Master in July 1997 and the Family Law Master's October 29, 1997, notice of a resulting recommended order. Thus, the first event to take place in the action after the dismissal was brought about by the Family Law Master. That event, i.e., the issuance of the October 29, 1997, notice, took place only a few days after the entry of the dismissal and invited the parties to file objections to the recommended order with the Circuit Court. Appellant Lambert filed objections, and Judge Zakaib, on July 22, 1998, remanded the action for a more thorough determination of the amount of child support reimbursement the appellant owed, which ultimately resulted in the $170,103.44 judgment. Under those circumstances, this Court concludes that the dismissal by Chief Judge Kaufman was inadvertent and without significance, especially since the parties were apparently unaware of the dismissal and since proceedings in this actively litigated action continued to be conducted by the Family Law Master and the Circuit Court with the parties' full participation.

■ The claim of the appellees for child support reimbursement and the $170,103.44 judgment against appellant Lambert, however, must be reviewed by this Court in the context of this Court's decision in *State ex rel. Department of Human Services by Adkins v. Huffman,* 175 W.Va. 401, 332 S.E.2d 866 (1985). In *Huffman,* the West Virginia Department of Human Services filed a complaint against a father to recoup AFDC benefits paid upon behalf of his children for the years during which he had abandoned his family. The Circuit Court, in certifying the question of reimbursement to this Court, ruled that, in the absence of a proceeding to determine the limits of support a parent-obligor is able to pay, there can be no basis for a judgment against that parent for AFDC benefits paid by the State. This Court, in *Huffman,* concluding that the Circuit Court ruled correctly, stated that the father in question, was "entitled to a hearing to determine his ability to repay the AFDC benefits." 175 W.Va. at 406, 332 S.E.2d at 871. As syllabus point 2 of *Huffman* holds:

> The Department of Human Services receives only those rights to recoupment of benefits paid under the Aid to Families with Dependent Children Program (AFDC) that an AFDC recipient could assign: the recipient's right to support and maintenance. That right to support and maintenance is dependent upon the ability of the responsible relative to pay, and the determination of ability to pay must be made through an administrative hearing or court proceeding.

*State ex rel. Department of Health and Human Resources v. Carpenter,* 211 W.Va. 176, 182, 564 S.E.2d 173, 179 (2002); syl. pt. 1, *State ex rel. Department of Health and Human Resources v. Sinclair,* 210 W.Va. 354, 557 S.E.2d 761 (2001); syl. pt. 1, *Wyatt v. Wyatt,* 185 W.Va. 472, 408 S.E.2d 51 (1991). Moreover, as this Court held in syllabus point 1 of *Fenton v. Miller,* 182 W.Va. 731, 391 S.E.2d 744 (1990): "The formal hearing that this Court has required in *State ex rel. Department of Human Services v. Huffman,* 175 W.Va. 401, 332 S.E.2d 866 (1985), is placed by statute in the West Virginia circuit courts and the family law masters, at such time as a Child Advocate seeks a judgment for back support." Syl. pt. 2, *Wyatt, supra.* Though not relevant to the time-frame of this action, this Court notes that family law masters have been replaced in this State by a system of family court judges. *See, W.Va. Code,* 51–2A–1 (2001), *et seq.*

In *Sinclair, supra,* this Court, reversed an AFDC reimbursement judgment entered against an appellant-husband and remanded

the action to the Circuit Court of Preston County for a *Huffman* style hearing. In so holding, this Court observed: "As this Court in *Huffman* made abundantly clear, the determination of the obligor's ability to pay, i.e., income and income-earning potential, must be made at some point in the proceedings to determine the appropriate level of reimbursement of AFDC benefits." 210 W.Va. at 359, 557 S.E.2d at 766.

■ Here, even before the Circuit Court's remand in July 1998 for a more thorough determination of the amount owed for child support reimbursement, the appellant asserted that his financial records, and the fact that he was paying separate maintenance to his estranged wife and the children of that marriage, had not been considered. In fact, the appellant asserted that, for a time in the 1980's, he was disabled and had virtually no income.

Upon remand to the Family Law Master, no hearing to determine appellant Lambert's ability to pay was ever conducted. Instead, the Family Law Master attempted, unsuccessfully, to mediate a settlement. Upon the failure of mediation, the appellant demanded a hearing, in writing, and stated that he intended to present various defenses to the $170,103.44 amount. No hearing was forthcoming, even though appellant Lambert argued that his reimbursement liability to the appellees was less than $10,000. As the appellant now argues, the Family Law Master did not comply with the directives indicated in the July 1998 remand order of the Circuit Court. Nor, specifically, was the appellant's ability to pay ever determined.

Upon all of the above, this Court is of the opinion that the Circuit Court committed error in adopting the July 14, 2000, recommended decision of the Family Law Master that the appellant owes the appellees child support reimbursement in the amount of $170,103.44. Instead, the action should be remanded for further proceedings, including a hearing as required by the *Huffman* decision.

### III.

### CONCLUSION

The final order of the Circuit Court of Kanawha County is, therefore, reversed, and

this action is remanded to that Court for further proceedings consistent with this opinion, including the entry of an order affording the appellant, Harry O. Lambert, a hearing pursuant to the principles set forth in *Huffman, supra.* In that regard, this Court notes that, inasmuch as the child in question has reached the age of 18, current child support is no longer payable. Accordingly, collection by the appellees of child support reimbursement from the appellant is hereby stayed pending a final determination of the amount of the appellant's liability.

Reversed and remanded.